Case No. 22-50936

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

MWK RECRUITING INCORPORATED

Plaintiff – Appellee

v.

EVAN P. JOWERS,

Defendant – Appellant

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

**REPLY BRIEF OF APPELLANT**

Aaron G. McLeod
ADAMS AND REESE LLP
1901 6th Avenue North
Suite 1110
Birmingham, AL 35203
(205) 250-5000
aaron.mcleod@arlaw.com
Counsel for Defendant-Appellant
Evan P. Jowers

Richard N. Asfar
ALMAZAN LAW
515 W. Bay Street
Suite 210
Tampa, FL 33606
(305) 665-6681
rasfar@almazanlaw.com
Counsel for Defendant-Appellant
Evan P. Jowers

## TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES....................................................................ii

STANDARD OF REVIEW......................................................................1

SUMMARY OF THE ARGUMENT .......................................................3

ARGUMENT ............................................................................................5

  I.    Information which six job placement candidates were free to divulge is not a trade secret................................................................5

II.    MWK's failure to both "plead and prove" a "legitimate business interest" is fatal to its breach of employment agreement restrictive covenants judgment ........................................................9

III.   MWK's unclean hands also warrant reversal of the breach of employment agreement restrictive covenants judgment ..................11

      A.    The unclean hands defense was sufficiently preserved ........... 11

      B.    Equitable defenses like unclean hands can defeat legal claims for damages ................................................................. 13

      C.    MWK's conduct is a textbook example of unclean hands ....... 14

CONCLUSION....................................................................................... 17

CERTIFICATE OF SERVICE ............................................................... 18

CERTIFICATE OF COMPLIANCE ...................................................... 18

# TABLE OF AUTHORITIES

## Cases

AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.,
    663 F.3d 966 (8th Cir. 2011)............................................................2

Blessey Marine Services, Inc. v. Jeffboat, L.L.C.,
    771 F.3d 894 (5th Cir. 2014)............................................................5

CAE Integrated, L.L.C. v. Moov Techs., Inc.,
    44 F.4th 257 (5th Cir. 2022) .........................................................6, 7

CEATS, Inc. v. TicketNetwork, Inc.,
    71 F.4th 314 (5th Cir. 2023) ............................................................12

Con-Dev of Vero Beach, Inc. v. Casano,
    272 So. 2d 203 (Fla. Dist. Ct. App. 1973) ........................................13

Corwin v. Marney, Orton Investments,
    788 F.2d 1063 (5th Cir. 1986)......................................................11, 12

CQ, Inc. v. TXU Min. Co., L.P.,
    565 F.3d 268 (5th Cir. 2009)............................................................6

Global Water Group, Inc. v. Atchley,
    244 S.W.3d 924 (Tex. App. – Dallas 2008, rev. denied) ....................8

GMT Const., Inc. v. Gulfside Supply, Inc.,
    116 So. 3d 515 (Fla. Dist. Ct. App. 2013) ........................................13

Guy Carpenter & Co. v. Provenzale,
    334 F.3d 459 (5th Cir. 2003) ....................................................1, 2, 5

Home Paramount Pest Control Companies, Inc. v. FMC Corp./Agr. Prod.
Grp.,
    107 F. Supp. 2d 684 (D. Md. 2000)...................................................2

Lance Roof Inspection Service, Inc. v. Hardin,
 653 F. Supp. 1097 (S.D. Tex. 1986).....................................................7

Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC,
 40 F. Supp. 3d 437 (E.D. Pa. 2014)....................................................6

Quality Systems, Inc. v. Warman,
 132 F. Supp. 2d 349 (D. Md. 2001)............................................ 3, 5, 6

Rodriguez v. Farm Stores Grocery, Inc.,
 514 F. 3d 1207 (11th Cir. 2008) .........................................................9

Roth v. Bowman,
 103 Fla. 923 (1931) .................................................................... 4, 14

S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist.,
 60 F.3d 305 (7th Cir. 1995).............................................................10

Trilogy Software, Inc. v. Callidus Software, Inc.,
 143 S.W.3d 452 (Tex. App. 2004) .....................................................7

Zoecon Indus.v. Am. Stockman Tag Co.,
 713 F.2d 1174 (5th Cir. 1980)...........................................................1

**Statutes**

5th CIR. R. 28.2.2 ..............................................................................1

Fla. Stat. § 542.18 ...........................................................................10

Fla. Stat. § 542.335...................................................................... 9, 10

Fla. Stat. § 542.335(1)(b)............................................................. 3, 10

**Secondary Authority**

RESTATEMENT OF TORTS § 757, cmt. b.............................................6

# Response as to Standard of Review[1]

While the parties generally agree on the standard of review following a bench trial (Jowers Brf. 21; MWK Brf. 28-29), an important detail requires clarification from the Court.

MWK cites several recent opinions for the proposition that, generally, "Whether information will be deemed a trade secret is a question of fact." MWK Brf. 35.

But one of the Fifth Circuit cases cited in both parties' briefs holds that "Whether customer lists are trade secrets is a question of law reviewed de novo." Guy Carpenter & Co., Inc. v. Provenzale, 334 F.3d 459, 468 (5th Cir. 2003); but see Zoecon Indus. v. Am. Stockman Tag Co., 713 F.2d 1174, 1179 n.8 (5th Cir. 1980) (stating "Whether customer information is generally known or readily ascertainable is a question of fact," while noting that "[b]ecause the classification of information as a trade secret depends on the facts of each case, this area of the law is unsettled, resulting in seemingly conflicting opinions. The classification of customers lists is particularly confused.").

---

[1] Since MWK's three-page Introduction (at MWK Brf. 1-3) lacks the requisite record cites, Jowers respectfully requests that it be disregarded in favor of those sections of the parties' briefs which are appropriately supported by the record. See, 5th Cir. R. 28.2.2.

Over 40 years ago, this Court observed that "the customer list cases stand on the periphery of that area of the law which can best be described as the 'trade secret quagmire[.]" Id. at 1179 n.8 (internal quotes omitted). Indeed, a number of other jurisdictions have held that whether a trade secret exists is a question of law. See e.g., AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp., 663 F.3d 966, 971 (8th Cir. 2011) ("Though the existence of a trade secret is a fact-intensive inquiry, it is ultimately a question of law determined by the court."); Home Paramount Pest Control Companies, Inc. v. FMC Corp./Agr. Prod. Grp., 107 F. Supp. 2d 684, 692 (D. Md. 2000) ("The existence of a trade secret is a conclusion of law based upon the applicable facts.").

Because the issue of whether customer-list information is a trade secret is a question of law or a question of fact will impact the applicable standard of review, Jowers respectfully submits that consistent with Provenzale, supra, and the other authorities cited above, the Court should make clear that whether a customer list qualifies as a trade secret is a question of law reviewed de novo.

This brief will develop three points: (1) the misappropriation claim failed because MWK did not prove the existence of a trade secret; (2) without a trade secret, there is no other basis in the record for the breach-of-contract claim; and (3) MWK's unclean hands furnished Jowers with an affirmative defense that he preserved and proved.

For its misappropriation claim, MWK is unable to identify any published authority from anywhere which has concluded that with respect to the recruiting business, candidate information which candidates can freely share with anyone they want is not "reasonably ascertainable" (and therefore, potentially subject to trade secret protection). The only trade secret opinion identified by either party specific to the recruiting business concluded exactly the opposite. Quality Systems, Inc. v. Warman, 132 F. Supp. 2d 349 (D. Md. 2001). The Warman Court's analysis makes sense: at bottom, candidates are free to work with anyone they want. MWK might have been "angry" (ROA.12243) that six candidates chose to work with Jowers, but MWK's anger cannot transform its candidates' information (which the candidates can freely share with anyone they want) into MWK's trade secret where, as here, the candidate choses to work with another recruiter. The trade secret portion of MWK's judgment should be reversed.

Should the Court agree, the breach of restrictive covenant portion of MWK's judgment should also be reversed. The only "legitimate business interest" MWK pleaded as required by applicable Florida law is a trade secret. Fla. Stat. § 542.335(1)(b). Accordingly, it does not matter if MWK proved any other legitimate

business interests at trial; Florida law's statutory requirement that a party seeking to enforce a restrictive covenant must also plead its "legitimate business interest" must control and result in reversal of the restrictive covenant judgment if the trade secret judgment is reversed.

With regard to the unclean hands defense, MWK's arguments do not warrant affirmance. MWK's contention that the unclean hands defense was not properly presented at trial is belied by MWK's decision to address it in its post-trial proposed conclusions of law and findings of fact. ROA.10241, ROA.10276. Also, the Florida Supreme Court recognized over 90 years ago that defenses at equity (like unclean hands) can defeat claims at law (like for breach of contract damages), subject to limited exceptions not present here. Roth v. Bowman, 103 Fla. 923, 925 (1931).

MWK offers no apologies for its conduct towards its top-performing recruiter. And while it may feel its conduct was appropriate, the trial court did not agree, as it clearly declined to adopt MWK's proposed findings of fact and conclusions of law pertaining to the unclean hands defense. ROA.10241, ROA.10276, ROA.10333.

**ARGUMENT**

## I. Information Which Six Job Placement Candidates were Free to Divulge is Not a Trade Secret.

Jowers has consistently argued that the information at issue in this case was not a trade secret. ROA.1975-1983, ROA.6465-6491, ROA.12527. While the trial court declined to rule that all the information that MWK contends is confidential is a trade secret, it did conclude that certain candidate-controlled information about six candidates, including their "names, their clients, how much their practices were worth, their language skills, their goals for switching firms, and their law school records," was MWK's trade secret. ROA.12527. A review of the authorities cited by the parties, however, demonstrates that the trial court erred.[2]

MWK cites a number of opinions in support of its argument. Notably absent from MWK's authorities is a case involving the recruiting business. The only opinion cited by either party pertaining to the business which is the subject of this case is Quality Systems, Inc. v. Warman, 132 F. Supp. 2d 349 (D. Md. 2001). As noted in

---

[2] MWK recognizes that this Court may review an order denying summary judgment where the appellant challenges a legal conclusion following a bench trial. MWK Brf. 31 (citing Blessey Marine Services, Inc. v. Jeffboat, L.L.C., 771 F.3d 894 (5th Cir. 2014)). If the Court follows Guy Carpenter & Co., Inc. v. Provenzale, supra, and holds that whether information constitutes a customer list trade secret is a question of law, than a de novo review of the trial court's trade secret determination at the summary judgment stage would be appropriate.

Jowers's Opening Brief (at 27-28), the <u>Warman</u> Court concluded that job applicant/candidate information was not a trade secret because it was "readily ascertainable" and lacked "economic value." <u>Id.</u> at 351-56. The candidate-controlled information which is the subject of this case is equally unworthy of trade secret protection.

MWK contends that the candidates' unbridled freedom to share whatever information about themselves with whomever they want is insufficient to render their information "readily ascertainable". MWK's argument overlooks that trade secrets "differ[] from other secret information in a business in that it is not simply information as to single or ephemeral events in the conduct of the business.... A trade secret is a process or device for continuous use in the operation of the business." <u>CQ, Inc. v. TXU Min. Co., L.P.</u>, 565 F.3d 268, 274 (5th Cir. 2009) (quoting RESTATEMENT OF TORTS § 757, cmt. b.). "[A]n employee's personal business contacts, although made while in plaintiff's employ, are not plaintiff's trade secrets." <u>Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC</u>, 40 F. Supp. 3d 437, 452 (E.D. Pa. 2014) (applying Pennsylvania's uniform trade secret act); <u>see also</u> <u>CAE Integrated, L.L.C. v. Moov Techs., Inc.</u>, 44 F.4th 257, 263 (5th Cir. 2022) ("Meissner's knowledge of whom he worked with while at CAE, absent other evidence, is insufficient to support a finding that he misappropriated trade secrets.").

Also, unless prohibited by an enforceable restrictive covenant, a former employee "is entitled to use the skills and experience that he has acquired through the years" when competing with a former employer. Lance Roof Inspection Service, Inc. v. Hardin, 653 F. Supp. 1097, 1104 (S.D. Tex. 1986).

The information these six candidates shared with MWK or Jowers is not a "process or device for continuous use in the operation of the business." Trilogy Software, Inc. v. Callidus Software, Inc., 143 S.W.3d 452, 463 (Tex. App. 2004). At most, it is candidate-specific information which each candidate controls and can freely share with whomever they want that might result in a fee-generating placement. There is no dispute that the candidates were acquainted with Mr. Jowers before he left MWK. Consistent with CAE, Jowers's knowledge of these candidates, standing alone, is insufficient to amount to a trade secret misappropriation.

There is also no dispute that these six candidates were always free to share their information with whomever they wanted. MWK did not require its candidates to sign non-disclosure agreements or exclusivity agreements. ROA.12231. In the absence of such restrictions, the candidates were free to share their information with anyone, including Jowers, in furtherance of their job search.

In the end, these six candidates chose to work with Jowers, not MWK. That decision made MWK's principal "angry." ROA.12243. While MWK may be angry

that these candidates chose to work with Jowers (and share whatever information needed to place them), MWK's anger does not transform information which the candidates can freely disseminate into a trade secret which is not "readily ascertainable." Jowers should not be punished merely because the candidates chose to work with him over MWK.

MWK tries to support the trial court's trade secret ruling by raising and attempting to distinguish <u>Global Water Group, Inc. v. Atchley</u>, 244 S.W.3d 924 (Tex. App. – Dallas 2008, <u>rev. denied</u>) (MWK Brf. 43 n.11). But a review of that opinion demonstrates some important similarities warranting reversal of the trial court's trade secret ruling. The <u>Global Water</u> Court noted the dearth of "evidence of the value of its formula to its business" when ultimately holding that the subject formula was not a trade secret. <u>Id.</u> There is a similar absence of evidence here—MWK provided no direct evidence that any of the six candidates would have worked with MWK after Jowers's departure. If anything, the evidence demonstrates exactly the opposite. As noted by the trial court during trial, it appears that MWK's principal threatened one of the six candidates (ROA.10177-10180, ROA.12241-12243), and clumsily disclosed the "confidential" names of several of the six candidates to another candidate while accusing that candidate of "colluding" with Jowers

(ROA.10181-10182).[3] Perhaps MWK's conduct towards its "trade secret" candidates is the reason why the trial court declined to find that their information had an economic value to MWK. ROA.10319-10362.

In light of the foregoing, Jowers respectfully submits that information pertaining to these six candidates was not MWK's trade secret, and that the trade secret portion of the judgment should be reversed.

## II.   MWK's Failure to Both "Plead and Prove" a "Legitimate Business Interest" is Fatal to its Breach of Employment Agreement Restrictive Covenants Judgment.

MWK argues that even if the trade secret judgment is reversed, its breach of Employment Agreement restrictive covenants judgment should survive under the "tipsy coachman" doctrine[4] because the record includes other "legitimate business interests" which would justify the onerous restrictive covenants. The problem with MWK's argument is that the Florida statute authorizing restrictive covenants, Fla. Stat. Sec. 542.335, does not merely require a party seeking enforcement to prove a legitimate business interest justifying the restrictive covenant. Rather, that statute

---

[3] Jowers sought to call these candidates at trial, but MWK successfully opposed Jowers's efforts to do so. ROA.7710-7712.

[4] Rodriguez v. Farm Stores Grocery, Inc., 514 F. 3d 1207, 1219-20 (11th Cir. 2008) ("the 'right for the wrong reasons' principle * * * is also known by the delightful title of the 'tipsy coachman' doctrine[.]").

expressly requires parties like MWK to also "plead" a legitimate business interest. Fla. Stat. § 542.335(1)(b). It is undisputed that MWK pled only one "legitimate interest"—trade secret. Accordingly, the record is insufficient to affirm the restrictive covenant judgment if the trade secret judgment is reversed.

Because of Florida law's unique treatment of restrictive covenants, strict compliance with this statutory requirement is essential. The Florida Legislature has made clear that generally, "Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful." Fla. Stat. § 542.18. The statute authorizing restrictive covenants, Fla. Stat. Sec. 542.335, provides an exception to this general rule so long as it is complied with. Thus, in order for a restrictive covenant to be enforceable, the party seeking enforcement must meet that statute's requirements, including the "plead and prove" requirement.

The statutory "plead and prove" requirement must be applied in federal court the same as it would in state court. This is because it is a procedural device that "is limited to a particular substantive area[.]" S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist., 60 F.3d 305, 310 (7th Cir. 1995). Judge Posner explained that in such instances, the state "procedural" rule applies in federal court because "the state's intention to influence substantive outcomes is manifest and

would be defeated by allowing parties to shift their litigation into federal court unless the state's rule was applied there as well." Id.

Simply put, MWK pled only one "legitimate business interest" which it sought to protect through its restrictive covenant. If this Court reverses the trade secret judgment, the breach of Employment Agreement restrictive covenants portion of the judgment should also fail because the record would be devoid of a "legitimate business interest" that was both pled and proven by MWK as required by Florida law. The record thus does not support affirming the judgment on any alternative business interest.

## III. MWK's Unclean Hands also Warrant Reversal of the Breach of Employment Agreement Restrictive Covenants Judgment.

Rather than address its conduct head-on, MWK first attempts to argue that the unclean hands defense was waived and inapplicable to its claim for damages. As discussed below, MWK's arguments do not hold up under scrutiny. Once the unclean hands evidence is evaluated, it becomes apparent that the trial court should have considered this defense on its merits, and ruled in Jowers' favor.

### A. The unclean hands defense was sufficiently preserved.

Generally, "issues must be presented to the trial court to receive appellate consideration, unless to ignore them would result in a fundamental miscarriage of justice." Corwin v. Marney, Orton Investments, 788 F.2d 1063, 1068 (5th Cir. 1986)

(internal quotes omitted). But, "an argument is not forfeited on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it." CEATS, Inc. v. TicketNetwork, Inc., 71 F.4th 314, 325 (5th Cir. 2023) (internal brackets omitted). This Court has held that an issue was properly preserved for appellate review even when it was presented in an "oblique" manner without explicitly stating the issue sought to be preserved. Corwin, 788 F.2d at 1068; see also CEATS, Inc., 71 F.4th at 326 (holding that issue was not forfeited for appellate review where appellant argued before the trial court that the "communications ... were clearly inadvertent.").

Under the above standard, the unclean hands defense was preserved. The defense was alleged in Jowers's operative pleading. ROA.5930. Both parties' pre-trial proposed conclusions of law and findings of fact referenced the unclean hands defense. ROA.7192, ROA.7323. And at trial, Jowers presented significant testimony regarding MWK's unclean hands. See generally, Jowers's Brf. 31-36.

Although MWK argues on appeal that the defense was not presented at trial, its post-trial submissions belie that contention. In fact, MWK proposed a number of findings of fact and conclusions of law addressed to the unclean hands defense. ROA.10241, ROA.10276. If MWK truly believed that evidence of unclean hands was

not presented at trial, MWK should have said so in its proposed findings of fact and conclusions of law. It did not.

What is more, even if this issue were not properly preserved, manifest injustice would occur if its merits are not considered. Such a result may signal to other employers that they, too, can do what MWK did to Mr. Jowers—leave him stranded in a foreign country as an inadvertent illegal immigrant while generating hundreds of thousands of dollars of profit for his employer. Jowers respectfully submits that the merits of this issue should be considered.

## B. Equitable defenses like unclean hands can defeat legal claims for damages.

On at least two occasions, Florida appellate courts have reversed orders disposing of unclean hands defenses directed at claims for damages. GMT Const., Inc. v. Gulfside Supply, Inc., 116 So. 3d 515, 518 (Fla. Dist. Ct. App. 2013) (reversing summary judgment for plaintiff in breach of contract action where plaintiff failed to rebut unclean hands and other affirmative defenses); Con-Dev of Vero Beach, Inc. v. Casano, 272 So. 2d 203 (Fla. Dist. Ct. App. 1973) (reversing order striking unclean hands affirmative defense in lawsuit seeking specific performance or money damages).

These opinions are consistent with the Florida Supreme Court's recognition over 90 years ago that equitable defenses (like unclean hands) may be asserted

against claims at law (like for breach of contract damages) so long as they are purely defensive (i.e., not in the nature of a cross- or counterclaim against the plaintiff, like setoff). Roth v. Bowman, 103 Fla. 923, 925 (1931).

MWK's citations are not inconsistent with the above authorities. They do not expressly state that unclean hands cannot be raised in actions at law. Rather, they simply recognize that this defense is available against claims at equity.

MWK's argument on this matter is simply incorrect, and should be rejected.

### C. MWK's conduct is a textbook example of unclean hands.

Jowers agrees with MWK that unclean hands will "bar relief" where there is "Unscrupulous practices, overreaching, concealment, trickery or other unconscientious conduct." MWK Brf. 53. But Jowers vehemently disagrees with MWK's contention that MWK's conduct towards a longtime high-producing employee was "scrupulous" and "conscientious." The trial court also did not agree with MWK: it declined to adopt MWK's proposed findings of fact and conclusions of law that would have approved of MWK's unseemly behavior. ROA.10241, ROA.10276, ROA.10333. The trial court's decision to refrain from approving of MWK's conduct is telling.

Of particular concern, MWK seems to think it appropriate for an employer (whose principal is a lawyer) to send an employee to live in a foreign country illegally

for the purpose of generating hundreds of thousands of dollars of profit for the employer without the requisite work visa.[5] MWK claims Jowers suffered no "serious injury" as a result of his inability to get health insurance and his illegal immigrant status in a foreign country. It downplays the toll that Jowers's 18-month ordeal took on him as merely "feeling jittery about legal consequences from immigration authorities which never materialized." MWK Brf. 55. MWK overlooks Jowers's compelling and unrefuted testimony regarding the impact this ordeal had on him:

> This is the hardest -- this was the hardest time in my life since I had like what I was going through, the turmoil and the stress was much worse than when I was in the Marines. I mean, this was -- I was in a situation, I didn't know what to do.

ROA.12496.

MWK placed Jowers in an untenable position. MWK's actions and omissions forced Jowers to either continue working for MWK as an illegal immigrant in a foreign country (while generating significant profits for MWK), or disengage for a year from the profession he has supported himself and his family with for over a decade. Jowers respectfully but resolutely submits this case presents a textbook

---

[5] Under the compensation plan that was in place at that time, MWK received up to 55% of the revenue generated by Jowers's efforts. ROA.12084-12085, ROA.12369-12370, ROA.12456. Since MWK required Jowers to pay for some or all of the cost of the Four Seasons from which Jowers worked (ROA.12248-12249), it appears much (if not most) of MWK's share of the revenue Jowers produced in Hong Kong was pure profit.

example of "Unscrupulous practices, overreaching, concealment, trickery or other unconscientious conduct," (MWK Brf. 53), and humbly prays for reversal.

Jowers respectfully requests that the Court reverse the *Amended Final Judgment* and remand with instructions to enter a judgment for him on MWK's trade secret misappropriation counts (Counts I and II of the *Second Amended Complaint*) and breach of restrictive covenants count (Count III), or to reverse and remand for further proceedings which the Court deems appropriate.

Respectfully submitted,

s/ Richard N. Asfar
Richard N. Asfar
*Counsel for Appellant Evan P. Jowers*

**OF COUNSEL**:
Almazan Law
515 W. Bay Street, Suite 515
Tampa, FL 33606
(305) 665-6681
(305) 665-6684 (fax)
rasfar@almazanlaw.com

**CERTIFICATE OF SERVICE**

I served on January 5, 2024, by means of electronic mail, a true and correct copy of this brief on the following counsel of record:

Martin J. Siegel, Esq.
2222 Dunstan Road
Houston, TX 77005
281.772.4568
martin@siegelfirm.com

s/ Richard N. Asfar
Of Counsel

**CERTIFICATE OF COMPLIANCE**

1.     This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,702 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Equity B font (installed after the 2021 updates resulting in the post-update version of "Equity B" being identical to the pre-update version of "Equity Text B").

Dated: January 5, 2024.

s/ Richard N. Asfar
Of Counsel